UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KATHLEEN A.,

                     Plaintiff,

    -against-                                                    3:20-CV-1034 (LEK)

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                     Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

This Social Security appeal is before the Court pursuant to Plaintiff's complaint filed September 3, 2020. See Dkt. No. 1 ("Complaint"). Plaintiff seeks review of the determination made by the Commissioner of Social Security that Plaintiff is not disabled and is therefore ineligible for Social Security Disability Income Benefits under the provisions of the Social Security Act, 42 U.S.C. § 301 et seq. See id. at 1; see also Dkt. No. 18 ("Plaintiff's Brief") at 1; Dkt. No. 12 ("Record"). The Commissioner of the Social Security Administration ("Commissioner" or "Defendant") has responded. See Dkt. No. 21 ("Defendant's Brief"). For the reasons that follow, the Commissioner's determination is remanded for further proceedings consistent with this Memorandum-Decision and Order.

**II.    BACKGROUND**

    **A.  Disability Allegations and Plaintiff's Testimony**

Plaintiff is a 49-year-old woman and was 46 years old at the time of her hearing in front of the administrative law judge ("ALJ") on May 29, 2019. Pl.'s Br. at 2, R. at 121. Plaintiff

alleges a disability onset date of August 8, 2013, and has not had substantial gainful employment since that date. R. at 19. Plaintiff initially filed for disability on February 6, 2018. R. at 17.

Plaintiff's medical records detail issues with back pain, R. at 448, 797, spasms and pain in her left leg, R. at 448, 524, spasms on her right side, R at 767, a bulging disk, R. at 449, 651, lumbar disc degeneration, R. at 465,481, tingling and numbness in her side and extremities, R. at 455, 529, 769, bilateral sciatica, R. at 768, and arachnoiditis, R. at 507, all stemming from a work-related injury she suffered in 2013, R. at 448.

At the hearing before the ALJ on May 29, 2019, Plaintiff testified that she had graduated high school and lived with her husband and four children. R. at 122. Plaintiff described previously being employed as a real estate agent, salesperson, and sales agent. R. at 123–24.

Plaintiff testified that her back related issues had forced her to stop working, R. at 128, she continues to have lower back pain and has back spasms several times a week, R. at 129, surgeries and shots she has received for her back have not been effective, R. at 130, she has permanent numbness in her left leg and hands, R. at 131, and that she occasionally loses sensation in her leg and it gives way, id.

Plaintiff estimated she could walk, sit, or stand for 30 minutes at most before changing position, walk fifteen minutes before resting, and could not walk up inclines. R. at 133. She testified she could not do many household activities and could not lift more than five pounds at a time. R. at 137.

### B.  The ALJ's Decision

#### 1.  *ALJ's Analysis of Plaintiff's Testimony and Expert Opinions*

The ALJ issued her decision on June 5, 2019. R. at 25. Addressing Plaintiff's testimony, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. at 22.

The ALJ first noted that Plaintiff had not been in distress at appointments, had settled her Worker's Compensation claim, indicating she required no additional treatment, had exams showing normal abilities, and had been advised to remain active by doctors. Id.

Turning to expert opinions given by medical professionals, the ALJ found the opinion of medical consultant, A. Saeed, M.D., only somewhat persuasive. Id. Dr. Saeed found Plaintiff capable of light exertion, but the ALJ found the record supported greater limitations due to the MRI of Plaintiff's spine showing nerve root displacement. R. at 22–23.

The ALJ found the opinion submitted by Dr. Hausmann, one of Plaintiff's treating physicians, generally persuasive. R. at 21. Dr. Hausmann opined that Plaintiff could lift up to ten pounds from waist level, could stand or walk two hours per day and would require frequent position changes. Id. The ALJ disagreed with Dr. Hausmann's limitation that Plaintiff would require frequent position changes, saying it was not fully supported by the record. Id. The ALJ noted Plaintiff was not in distress at appointments, and was able to do every-day tasks such as maintaining personal care, preparing meals, folding laundry, shopping etc. Id. The ALJ otherwise accepted Dr. Hausmann's opinion. Id.

Finally, and most significant to Plaintiff's appeal, the ALJ analyzed the opinion submitted by Dr. Haswell, M.D., who also treated Plaintiff directly. R. at 23. Dr. Haswell stated Plaintiff could not work due to pain, could sit for fifteen minutes at a time but less than two hours total in a workday, could stand or walk fifteen minutes at a time, could only rarely lift ten pounds, and could never perform postural activities. Id. Haswell found Plaintiff would require significant off task time, up to 20% of the workday, and that Plaintiff would miss more than four

days of work per month. Id. The ALJ found these restrictions contradicted by Haswell's "own records" which described claimant as "doing a lot more traveling and moving around." Id. (citing R. at 783). The ALJ further observed that Haswell did not regularly note any neurological deficits and "there is no EMG/nerve conduction study to confirm any radiculopathy during the period in question." R. at 23. The ALJ also stated that Haswell's records from the time period indicating Plaintiff was exercising and losing weight. Id. The ALJ thus found Haswell's opinion "less persuasive." Id.

2. *The ALJ's Disability Analysis*

The ALJ ultimately found Plaintiff was not disabled and denied her application for disability benefits. R. at 25. In making this determination, the ALJ analyzed Plaintiff's testimony, the underlying medical record, and the opinions of medical experts as described above. See R. at 17–25.

The ALJ found that Plaintiff met the Social Security Act's insured status requirements and had not engaged in substantial gainful activity since August 8, 2013, the alleged onset date. R. at 19. The ALJ found Plaintiff's back pain was a severe impairment. Id. Next, the ALJ held Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. R at 20. Given Plaintiff's impairments and symptoms, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a) except she could only perform occasional stooping, and she was unable to perform repetitive stooping. In addition, she was unable to climb ladders, ropes or scaffolds." R. at 20–21.

The ALJ determined Plaintiff was not capable of performing any past relevant work. R. at 23. However, the ALJ found that given Plaintiff's RFC and the testimony of a vocational expert,

she could perform jobs that existed in significant numbers in the national economy and was therefore not disabled. R. at 24.

### C. Procedural History

Plaintiff filed her initial application for supplemental social security disability benefits on February 6, 2018. R. at 302. The social security administration denied her claim on April 10, 2018. R. at 147. Thereafter, Plaintiff requested a hearing before an ALJ, which was held May 29, 2019. R. at 17.

On June 5, 2019, the ALJ issued the above-described opinion, denying Plaintiff's claim for benefits. R. at 25. Plaintiff requested review by the Appeals Council, which was denied on June 30, 2020. R. at 3–8.

On September 3, 2020, Plaintiff initiated the present matter. See Compl.

## III. LEGAL STANDARD

### A. Standard of Review

When a district court reviews an ALJ's decision denying a claim for social security benefits, it must determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). Substantial evidence is "more than a mere scintilla," and must reasonably support the decision maker's conclusion. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence has alternatively been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). This "very deferential standard of review," Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012), requires a court to defer to an ALJ's decision if supported by substantial evidence, "even if [the court] might justifiably have reached a different result upon a de novo

review." Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)).

### B. Standard for Award of Benefits

A "disability" sufficient to merit an award of benefits under the Social Security Act is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). However, an individual seeking disability benefits "need not be completely helpless or unable to function." De Leon v. Sec'y of Health and Human Servs., 734 F.2d 930, 935 (2d Cir. 1984).

An ALJ undergoes a five-step evaluation process to determine whether a claimant is disabled and eligible for disability benefits. 20 C.F.R. § 404.1520(a)(1). If the ALJ determines at any step that the claimant is disabled or not disabled, the evaluation ends. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful work activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. Id. At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe," i.e., that "significantly limits" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(c). If the claimant does not have such an impairment, the claimant is not disabled. Id. At step three, the ALJ asks whether the claimant's medically determinable impairment(s) are as severe as an impairment listed in Appendix 1 of Subpart P of § 404. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R., Pt. 404, Subpt. P, App. 1. If so, the claimant is disabled.

Id. At step four, the ALJ determines claimant's RFC and determines whether claimant can perform work they performed in the past, if they can, they are not disabled. § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, or if the claimant does not have any relevant past work, the ALJ decides at step five whether, given the claimant's RFC, age, education, and work experience, they are capable of adjusting and performing "other work" that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant "cannot make an adjustment to other work," then the claimant is disabled. Id.

In the first four steps, the claimant bears the burden of proof. At step five, the burden shifts to the Commissioner. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

### C.  Standard for ALJ's Consideration of Medical Opinions

For claims filed after March 27, 2017, an ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Rather, the ALJ will determine how persuasive they find each medical source's opinions and medical findings using five factors: supportability, consistency, relationship with claimant, specialization, and "other factors." Id. Supportability and consistency are "[t]he most important factors." Id. An ALJ "will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision" and "may" explain how they considered the other three factors. 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to specifically set forth how she considered the supportability and consistency factors and failure to do so is legal error. Johnathan W. v. Saul, No. 19-CV-1242, 2021 WL 1163632, at *4 (N.D.N.Y. Mar. 26, 2021) (regarding a medical opinion "an ALJ is obligated to 'articulate,' at minimum, her consideration of the factors of supportability and consistency . . . with respect

7

thereto."); Charles F. v. Comm'r of Soc. Sec., No. 19-CV-1664, 2021 WL 963585, at *2 (W.D.N.Y. Mar. 15, 2021) (ALJ must "explicitly 'explain how [he] considered [at least] the supportability and consistency factors.'") (citing 20 C.F.R. § 404.1520c(b)(2)).

## IV.  DISCUSSION

Plaintiff argues that the ALJ improperly evaluated the opinion and medical findings of Dr. Haswell and violated 20 CFR 404.1520c(b)(2) because her analysis of the supportability of the opinion misconstrued the record and substituted her own medical expertise for that of the treating physician, and because the ALJ failed to analyze the consistency of the Haswell opinion entirely. See Pl.'s Br. at 12.

### A.  The ALJ's Supportability Analysis

The supportability analysis focuses on "how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations." Carmen M. v. Comm'r of the Soc. Sec. Admin, No. 20-CV-06532, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021). The more an opinion is internally reinforced by "relevant . . . objective medical evidence and supporting explanations," the more persuasive it will be found. 20 C.F.R. § 404.1520c(c)(1).

The ALJ found that Haswell's restrictions related to off-task time and time off work were not supported by his own records. R. at 23. To demonstrate this lack of support, the ALJ first cited to Haswell's records where he described Plaintiff as "doing a lot more traveling and moving around." Id. (citing R. at 783). Plaintiff objects to the ALJ's reference to this statement, arguing that it is taken out of context and the ALJ has thus misconstrued the record. Pl.'s Br. at 11. The full sentence, Plaintiff argues, is that "[h]er back pain is a bit worse, as she is doing a lot more traveling and moving around." Id. (citing R. at 783). Plaintiff contends that because Haswell stated that Plaintiff's back pain was actually worse, this means the sentence, taken in

8

proper context, contradicts "the ALJ's attempt to make it sound as though Plaintiff had improved." Id.

Contrary to Plaintiff's assertion, a plain reading of the ALJ's decision illustrates that she refers to Haswell's statement, not necessarily to claim that Plaintiff's back was improving, but to show that Haswell had acknowledged Plaintiff was capable of traveling and "moving around." This capability did not support Haswell's assessment that Plaintiff's symptoms were so severe she would require significant off-task time and days off work. See R. at 23 ("In support of these opinions, [Haswell] cited back pain, neck pain, . . . However, his own records describe the claimant as 'doing a lot more traveling and moving around.'"). Even if the statement is taken in full context, and it is understood this traveling and moving aggravated the pain in Plaintiff's back, the fact remains that she was capable of travelling and moving, and this capability could reasonably be found to not support Haswell's stated restrictions. Thus, the Court cannot say that the ALJ's decision to reference only part of the statement renders her decision unsupported by substantial evidence or is a misapplication of law.

Second, the ALJ stated that Haswell's records "indicate the claimant was exercising and losing weight, which is contrary to the extreme limitations found in his opinion." Id. Plaintiff objects, arguing that the record shows she lost weight, "not only due to exercise, but [also] the use of Phentermine." Pl.'s Br. at 12. And that even after the weight loss, Haswell continued to find Plaintiff unable to work due to her conditions. Id.

However, the fact that medication also contributed to the weight loss does not render the ALJ's finding erroneous, as it is not disputed that Plaintiff did exercise and that such exercise contributed to weight loss. It was not error for the ALJ to find that these activities did not support

Haswell's extreme limitations. Thus, the ALJ's reference to the exercise and weight loss does not render her decision unsupported by substantial evidence.

Third, the ALJ states that, while Haswell does cite back pain in his records, "he does not regularly note any neurological deficits. In fact, there is no EMG/nerve conduction study to confirm any radiculopathy during the period in question." R. at 23. This, Plaintiff argues, is "akin to the ALJ playing doctor" and the ALJ speculating that she would "somehow know what limitations would exist if [a] nerve conduction study had been taken." Pl.'s Br. at 12. Plaintiff argues the ALJ does not show how the lack of such a study diminishes Haswell's opined limitations. Id.

However, the contradiction referenced by the ALJ is clear. The ALJ notes that Haswell's records contradict his assessment of restrictions due to a neurological issue: radiculopathy. The ALJ points to the fact that Haswell does not regularly note neurological deficits and did not seek a nerve conduction study to confirm radiculopathy. The ALJ clearly cites this, not to claim she knows the results of a non-existent study, but to give an example of Haswell generally failing to address or note neurological deficits in his treatment records, which could reasonably be found to contradict his assessment of extreme restrictions due to neurological issues.

Thus, the Court finds that the ALJ's finding as to the supportably of Haswell's opinion does not render the ALJ's decision unsupported by sufficient evidence and, as such, does not mandate remand or reversal.

**B.  The ALJ's Consistency Analysis**

However, the Court finds that the ALJ did not sufficiently address the consistency factor regarding Haswell's opinion.

In the consistency analysis, an ALJ must look outside the medical opinion itself to "evidence from other medical sources and nonmedical sources in the claim" and will find the

10

medical opinion "more persuasive" the more consistent it is with these external sources. See 20 C.F.R. § 404.1520c(c)(2); Galo G. v Comm'r of the Soc. Sec. Admin, No. 20-CV-1011, 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021) ("The regulations provide that with respect to consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be.").

The ALJ's analysis of Dr. Haswell's opinion completely lacks any reference to "other medical sources and nonmedical sources in the claim." Instead, it relies entirely on the contradiction between Haswell's stated restrictions and his own records to reach the determination that the opinion is "less persuasive." R. at 23.

Defendant argues that the Court should take a more expansive reading of the opinion. Def.'s Br. at 16 ("[Plaintiff's argument] improperly isolates the ALJ's discussion of Dr. Haswell's opinion from the remainder of the decision."). Defendant proceeds to identify other portions of the ALJ's decision that address other medical sources. Id. However, it is not sufficient for an ALJ to merely discuss other medical sources at some point in the decision. Rather, the ALJ is explicitly required to "explain how [they] considered the supportability and consistency factors *for a medical source's medical opinions*." 20 C.F.R. 404.1520c(b)(2) (emphasis added). Thus, an ALJ must specifically set forth how they considered the consistency of a medical opinion in the analysis of the medical opinion, not merely refer to the other medical evidence at some point in the decision. See Darla W. v. Comm'r of Soc. Sec., No. 20-CV-1085, 2021 WL 5903286, at *7 (N.D.N.Y. Dec. 14, 2021) ("the ALJ was required to analyze Dr. Scott's medical opinions under 20. C.F.R. § 404.1520c, specifically setting forth how he considered the supportability and consistency factors. The ALJ's failure to do so was legal error.") (citations omitted); Cuevas v. Commissioner, No. 20-CV-0502, 2021 WL 363682, at *14

(S.D.N.Y. Jan. 29, 2021) (finding an ALJ's failure to address one of the factors as it applied to a medical opinion legal error justifying remand); see also Johnathan W., 2021 WL 1163632, at *7; Charles F., 2021 WL 963585, at *2.

Because the ALJ failed to address the consistency factor as it applied to Dr. Haswell's opinion, the Court remands for additional proceedings appropriately addressing all factors required by 20 C.F.R. § 404.1520c.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Commissioner's determination of no disability is **VACATED**, and the matter is **REMANDED** for further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   March 7, 2022
         Albany, New York

LAWRENCE E. KAHN
United States District Judge